IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| SAMANTHA BURKE, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-cv-00281 |
| | § | |
| VICTORIA'S SECRET STORES, LLC, | § | |
| VICTORIA'S SECRET STORES BRAND | § | |
| MANAGEMENT, INC., and VICTORIA'S | § | |
| SECRET DIRECT BRAND | § | |
| MANAGEMENT, LLC, | § | |
| *Defendants*. | § | |

## AGREED PROTOCOL FOR ESI DISCOVERY

**I.     General Principles:**

A.     An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner, including, without limitation, the search for "documents" as defined by the Federal Rules of Civil Procedure.

B.     The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

C.     The proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) should be applied in each case when formulating a discovery plan.

D.     To further the application of the proportionality standard in discovery, requests for production of documents, including electronically stored information ("ESI"), and related responses should be reasonably targeted, clear, and as specific as practicable.

E.     The parties, at this early stage in the litigation, enter into this Protocol in an effort to comply with the proportionality standard applicable to discovery proceedings.  The parties

agree to revisit and modify this agreement if they agree that it has become necessary to do so. The parties agree to make a good faith effort to meet and confer on any disputes arising under or related to this Protocol. If the parties cannot resolve any disputes, then they shall submit the dispute to the Court.

**II.     Provisions for ESI Discovery**

A.     Custodians of ESI: A producing party's search shall include a search for ESI likely to contain discoverable information that is available to, accessible by, and/or within the possession, custody and/or control of individuals under the producing party's control, i.e. custodians.

B.     Non-custodial files: ESI that is stored on shared drives, servers, by group, or by product may not be readily identified as being attributable to "a custodian" but may be likely to contain discoverable information. (For example, in a products liability case, the file maintained on the product). Searches shall include such non-custodial files.

C.     Sources of ESI: A producing party's search shall include a review of all reasonably accessible sources of ESI available and/or accessible to custodians and/or stored in non-custodial files that may contain discoverable information, including, but not limited to, computer hard drives, computer network drives, cloud/internet drives, portable storage devices, document management systems, electronic media and/or electronic mail accounts and/or other computer programs. Sources of ESI may include personal computers and other electronic storage devices within the possession, custody and/or control of custodians, without regard to whether such devices are owned by a party to this action.

D.     Physical Review of ESI: A producing party shall, as a threshold matter, review all sources of ESI to identify all ESI likely to contain discoverable information without the use of

computer-assisted searches. A party shall then undertake Computer-Assisted Searches (described below) and produce the discoverable materials resulting from both the Physical Review and Computer-Assisted Searches.

E. Use of Computer-Assisted Searches: To the extent the use of computer-assisted searches of sources of ESI is reasonably helpful in locating ESI likely to contain discoverable information, the producing party shall identify all such sources for which computer-assisted searches are to be used, and the parties shall endeavor to reach an agreement on the appropriate search terms or queries before any computer-assisted searches are performed. The parties shall confer in good faith regarding the terms or queries to be used. Focused terms and queries, rather than disproportionately burdensome ones, shall be utilized.

F. For all Physical Reviews of ESI and all Computer-Assisted Searches, the producing party shall

(1) Identify all sources of ESI (whether custodial[1] or non-custodial) searched, and

(2) Identify the specific searches performed, including all search terms and connectors used. If search terms were not used, a party shall disclose the search methodology used to locate ESI likely to contain discoverable information.

G. If a review of ESI produced suggests additional responsive ESI exists that has not been produced, a requesting party may request up to five additional searches to be used in connection with further electronic searches, and/or may specify sources to be searched.

III. **Format for Production**

A. Compatibility with Electronic Review Platforms: To the extent possible, the parties agree to produce all documents in a format that is compatible with a standard electronic review platforms (e.g., Summation, Concordance, Eclipse, Relativity), including production of

---

[1] Each custodian shall be identified by name and position.

necessary Load Files, and in accord with standard practices relating to Delivered Volumes and Parent/Child Relationships. The parties agree that the format of production, unless unavailable, is a Load File containing the information identified in Exhibit A relating to ESI being produced (e.g., date, author, recipient, file type, etc.), accompanied by single-page TIFF color image files in 300 DPI, and a native file, as described below. For any ESI produced, the parties agree to produce all metadata contained in Exhibit A, unless unavailable. The producing party will provide the following standard load files with each delivered volume copy of each file:

- Summation DII (Images, Text, and Data Fields – see list of fields in Exhibit A)
- Text Delimited DAT (Data Fields – see list of fields below)
- OPT (Images Only)
- For the Summation DII file, please use eDII Tokens where available and @C references for fields where eDII tokens are not available. Text and Natives should also be referenced and loaded via the DII file.
- For the Text Delimited DAT file, standard Concordance Delimiters should be used. Text and Natives should also be referenced and loaded via the DAT file.

B. Paper Documents: To the extent a party maintains documents responsive to a request in paper format, such documents shall be converted to and produced in an electronic format as described herein, wherever reasonably possible, and in a manner reasonably reflecting accurate document unitization, including all attachments and contained information (to be reflected in the Docid, Parentid, Attachid and Folderid as defined in Exhibit A). Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder). The first document in the collection represents the parent document and all other documents will represent the children. All unitization shall preserve the organization in which such documents are maintained in the regular course of business.

C. Electronic files: To the extent documents, information, and/or files are maintained in an electronic format, please produce them according to the following conventions:

   a. TIFF Image Files. The producing party will provide a TIFF image for each page of the native files (other than those described in B(2) above). Images must be Group IV TIFF files, 300 DPI single page files. All images should be Bates numbered. The number of TIFF files per folder should be limited to 1,000 files. Do not create TIFF images of spreadsheets, autocad files, database files, or documents that contain tracked changes, comments, or other markup. For these file types and/or any other files that cannot easily be rendered to TIFF, a TIFF place holder and the native file should be produced. The TIFF placeholder should be assigned a bates number, and should specify the name/location of the native file as well as the reason why the file could not be rendered to TIFF (ie Native Only Produced, Unable to Process Native, etc).

   Color Images. Please produce color images where color is used. Images should be produced as color 300 dpi single-page JPEG files.

   b. Native Files: To the extent available, the producing party shall provide a native copy of each file. The native file should be named the same as the BegDoc# assigned to each document during the TIFF process. Additionally, If any native file is an attachment to an electronic document produced in TIFF Image Format, the native file shall be Bates numbered in a manner sufficient to maintain the relationship between the electronic documents. A requesting party shall have the reasonable opportunity to request the native file(s) associated with any ESI produced in TIFF Image Format.

   c. Text Files. The producing party will provide a text copy of each file. Any native document in which text cannot be extracted should be OCR'd, particularly in the case of PDFs without embedded text. For any scanned TIFF image that is produced, please produce OCR text created from the scanned images. A single TEXT file should be provided for each native file. The text file should be named the same as the BegDoc# assigned to each document during the TIFF process.

   d. Parent/Child Relationship. When an e-mail and corresponding attachment(s), or any other native document with attachments are both produced, the load file will sequence the attachment(s) in a parent child relationship (e.g., the parent e-mail will always precede the attachment (child/ren)). If the parent/child relationship exists, please maintain the integrity of the source and attachment relationship by appending or inserting the following fields: "BegAttach", "EndAttach", "Parentid" and "Attachids"

C. Bates Numbering: All documents produced should be Bates numbered by the producing party in a manner that reasonably preserves the organization in which such documents are maintained in the regular course of business.

D. Redactions: Redactions of TIFF Image Files shall be recorded in a method easily indicating the size of the applicable redaction (e.g., black box on white image) and clearly marked "REDACTED."

Respectfully submitted,

/s/ Fred Hagans
Counsel for Plaintiff

/s/ David Ostermanq
Counsel for Defendants

Signed at Galveston, Texas, this 18th, day of April, 2018

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

601272-3

# EXHIBIT A

| SAMPLE FIELD NAME | DESCRIPTION | SAMPLE DATA |
|---|---|---|
| BegDoc# | Beginning electronic number assigned to the document's first page. | |
| EndDoc# | Ending electronic number assigned to the document's last page. | |
| BegAttach | Beginning electronic number assigned to the first page of the parent document. | |
| EndAttach | Ending electronic number assigned to the last page of the last attachment with the attachment range (family). | |
| ATTACHMENTS | Number of Attachments | 2 |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message as provided in the original e-mail message | "first name last name", "last name, first name" or e-mail address |
| CC | Recipient(s) of "Carbon Copies" of the e-mail message as provided in the original e-mail message | "first name last name", "last name, first name" or e-mail address |
| Doctype | Source application assigned to the native file, as specified in the file type database | Microsoft Word, Adobe Acrobat etc. |
| Datecrtd | Creation date and time of e-docs | 07/03/2009 7:13:29 PM CDT |
| CUSTODIAN | | "last name, first name" |
| FileName | Original name of the loose file or email attachment. | SAMPLE.DOC |
| Fileext | File Extension | .DOC |
| FILEPATH | Original source full folder path | |
| FOLDERID | Hard Copycontainer information (e.g. Folder or binder name) | |
| FROM | Author of the e-mail message as provided in the original e-mail message | "first name last name", "last name, first name" or e-mail address |
| MD5 HASH or SHA 1 | Unique identifier, similar to "fingerprint". Uses 128 bit encryption | |
| CREATED | Date and time the native file was created | 07/03/2009 7:13:29 PM CDT |
| MODIFIED | Date and time the native file was last modified | 07/03/2009 7:13:29 PM CDT |

| SAMPLE FIELD NAME | DESCRIPTION | SAMPLE DATA |
|---|---|---|
| Doclink | Path where Native file is stored - output for hyper linking within the database and not the original location preceding collection | \\192.168.1.6 \ Unicron \TiffTester\joes\B018 \Extracted \FSF01_1 \aea \1dOcbe9510845fbfbe23519a8902d.mail |
| PATH | Link to the first TIFF(s) or Link to the starting Production ID | Volume001\BRO0000001\BT0000 01.tif |
| MEDIA | Describes whether the document is an "Email", "Attachment" or "edoc" | |
| Docid | Production ID for each document produced (parties can create their own naming schema not to exceed 10 alpha characters followed by 7 numeric digits zero (0) filled) | AAA0000001 |
| Parentid | Production ID for the Parent document (parties can create their own naming schema not to exceed 10 alpha characters followed by 7 numeric digits zero (0) filled) | AAA0000001 |
| Attachids | Production ID for the child document (parties can create their own naming schema not to exceed 10 alpha characters followed by 7 numeric digits zero (0) filled) | AAA0000001 |
| Timesent | Time the e-mail message was sent | 7:13:29 PM CDT |
| Datesent | Date the e-mail message was sent | 07/03/2009 |
| Filesize | File size in KB | 765,952 |
| SUBJECT | Subject field value extracted from metadata of native file | Chain Letters |
| TITLE | The title of a document per Microsoft Office Properties field if populated by the creator | |
| TO | Main recipients of the e-mail message as provided in the original e-mail message | "first name last name", "last name, first name" or e-mail address |
| VOLUME | Volume ID | Volume001 |